## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANDRA A. WILLIAMS, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| LAZER SPOT, INC., and ARTHUR HENDERSON, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Sandra A. Williams, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Lazer Spot, Inc., and Arthur Henderson (*collectively*, "Defendants"), respectfully showing the Court as follows:

### I. JURISDICTION AND VENUE

1.

Plaintiff Sandra A. Williams brings the above-captioned case pursuant to (a) Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, for sexual harassment (hostile work environment and *quid pro quo*)

and retaliation and (b) the laws of the State of Georgia for assault, battery, intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

4.

Prior to commencing this matter, Plaintiff satisfied all administrative prerequisites to institute this action. Specifically, Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2019-05685) and Plaintiff has timely commenced the above-

captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated February 11, 2011.

## II.  PARTIES

5.

Plaintiff Sandra A. Williams ("Williams" or "Plaintiff") is a fifty-eight (58) year old African-American female, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

6.

At all relevant times, Williams was employed by Lazer Spot, Inc., within the meaning of, among other laws, the Title VII, 42 U.S.C. § 2000e(f).

7.

Defendant Lazer Spot, Inc., ("Lazer Spot") is a Georgia profit corporation and provider of yard management in the United States and Canada, affecting inter-state commerce through its headquarters located in Alpharetta, Georgia.

8.

Lazer Spot is subject to the Court's jurisdiction with a principle office located at 6525 Shiloh Road, Suite 900, Alpharetta, Georgia 30005.

9.

Lazer Spot is an "employer" within the meaning of, among other laws, Title VII, 42 U.S.C. § 2000e(b), with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

10.

Lazer Spot may be served with process through Corporation Service Company, Registered Agent, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

11.

Defendant Arthur Henderson ("Henderson")—African-American male— was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

12.

Henderson served, at all relevant times, as a Manager involved in the day-to-day operation of Lazer Spot, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation Lazer Spot.

13.

Wilson may be served at Lazer Spot located at 6525 Shiloh Road, Suite 900, Alpharetta, Georgia 30005.

## III.  FACTUAL ALLEGATIONS

14.

Williams re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

15.

Lazer Spot provides, *inter alia*, yard management to manufacturers and retailers located in the United States and Canada from facilities, including, but not limited to, its headquarters located in Alpharetta, Georgia.

16.

Williams is a fifty-eight (58) year-old African-American female.

17.

After completing high school, Williams obtained a Class A, Commercial Driver's License, permitting Williams to operate vehicles with a Gross Vehicle Weight Rating of 26,0001 pounds or more.  Subsequently, Williams became a professional Truck Driver.  Prior to working for Lazer Spot, Williams was the Owner/Operator of Williams 5 Trucking.

18.

On or about September 6, 2018, Williams became employed, at the Alpharetta location under the supervision of Henderson, by Lazer Spot as a Driver, responsible for safely relocating freight between locations.

19.

Immediately upon the commencement of Williams' employment, Henderson began sexually harassing Williams on a daily, continual, and regular basis.

20.

On almost a daily basis at Lazer Spot, Henderson subjected Williams to unwelcomed sexual advances and comments.  For example, Henderson routinely groped Williams' breasts and buttocks.  Similarly, Henderson repeatedly requested that Williams accompany Henderson to the woods, hotels, and Henderson's residence to engage in sexual intercourse.  Often, when making these unwelcome sexual advances and requests, Henderson was intoxicated.

21.

Although Williams repeatedly ignored, turned away, pulled away, walked away and declined Henderson's unwelcome sexual advances, expressed displeasure with the remarks and advances, and otherwise attempted to limit interactions within the confines of professional discussions, Henderson continued and escalated the unwelcome sexual advances, requests, and comments.

22.

Despite Henderson's unwelcome sexual advances, within a month of employment, Williams diligently and professionally performed all assigned duties and tasks as a Drive.  Consequently, within a month of employment, Williams was promoted to Lead Driver.  In this capacity, Williams was responsible for providing customer service, serving as a liaison between customers and drivers, as well as other duties and tasks assigned by management, including Henderson.

23.

In addition to the hostile work environment, Henderson utilized his position of authority to attempt to extort sexual favors from Williams in exchange for compensation and professional assistance.  For example, Henderson repeatedly stated that Henderson would give Williams additional monies, if Williams would spend the day with Henderson and engage in sexual intercourse.  And, on at least

one occasion, Henderson offered to rehire Williams' friend and former Laser Spot employee, Rika, if Williams kissed Henderson. Because Rika diligently and professionally performed all tasks while working with and under Williams, the rehiring of Rika would have improved Williams' productivity, decreased Williams' workload, and otherwise assisted Williams' professional performance while employed by Lazer Spot.

24.

Faced with the unyielded and unrelenting sexual advances, comments, and offers, Williams eventually summoned the courage to report Henderson's unlawful conduct. In this regard, Williams was instructed to report issues through the chain-of-command, beginning with Henderson. However, because Henderson was the subject of Williams' complaints, Williams was un comfortable with discussing the matter with Henderson. Despite repeated requests, no one would advise Henderson how to report/complain about Henderson's unwelcome sexual advances and Human Resources would not answer or respond to Williams' calls.

25.

Because Williams' immediate supervisor, Henderson, was the subject of the complaint, Williams sought to meet with other members of Lazer Spot's management to seek remedial action. Beginning in or about November 2018,

Williams sent texts to Jerry Hudgins ("Hudgins")—Henderson's supervisor—to set up a meeting to discuss Henderson's unwelcome sexual advances. After receiving no response, Williams discovered that Hudgins was no longer employed by Lazer Spot.

26.

When Williams refused to entertain Henderson's unwelcome sexual advances, in or about February 2019, Henderson began making sexual advances to another Driver, Shawne McKinney ("McKinney"), who was receptive to Henderson's sexual advances and commenced a sexual relationship.

27.

To punish Williams who refused to yield to Henderson's unwelcome sexual advances, Henderson then engaged in a retaliatory campaign against Williams. For example, beginning in February 2019, Henderson reduced Williams hours without any cause or explanation. Furthermore, Henderson convinced McKinney to falsely report that Williams was improperly writing-up, harassing, and bullying Drivers. However, Williams never wrote-up any Drivers. Moreover, McKinney falsely accused Williams of spreading rumors related to a sexual relationship between Regional Manager Troy Watson ("Watson"), Regional Manager and Henderson's personal friend, and another Driver.

28.

Similarly, although Williams was required to execute an Employee Handbook as part of the 6-month evaluation, Henderson refused to provide Williams with the Handbook.  When Henderson finally provided an incomplete and altered document missing pages related to sexual harassment, Williams refused to acknowledge receipt of the complete, unaltered Handbook.  Henderson then responded that, until Williams acknowledged receipt of the Handbook, Williams would not receive an increase in compensation and Williams would be demoted.  Faced with Henderson's threats, Williams executed a document acknowledging receipt of the Handbook although Williams was not provided with the complete document.

29.

Williams repeatedly attempted to complain to Lazer Spot's management about Henderson's unlawful conduct.  On at least one occasion, Williams requested contact information for Human Resources, however, Henderson refused to provide Williams with the information needed to report Henderson's unlawful conduct. Williams also attempted to communicate Watson, Regional Manager, however, Henderson then sent a text message, instructing Williams not to contact Watson. Williams also contacted Rodney Felix, Manager in McDonough, who also failed to respond to Williams.

30.

Continuing the retaliatory campaign, on or about May 14, 2019, Henderson wrote-up Williams for allegedly reprimanding Drivers (McKinney and Isaac Jefferson) without an explanation.  However, Henderson instructed Williams to write-up the Drivers.  Rather than write-up the Drivers who had not been properly trained, Williams verbally discussed with the Drivers the issues raised by Henderson.  As a result of Henderson's write-up, Williams was demoted to Driver, resulting in a reduction in compensation.

31.

Faced with Henderson's retaliatory campaign and efforts to wrongfully terminated Williams' employment, on or about May 30, 2019, Williams sent Lorraine Sosa ("Sosa"), Vice President of Human Resources, a letter, complaining about unlawful treatment based upon gender and retaliation at the hands of Henderson.  Moreover, Williams requested that Lazer Spot mediate the dispute and issues involving Henderson.  Sosa never responded to Williams' letter or took any remedial action.

32.

Immediately following Williams' complaint and letter to Sosa, Henderson became even more hostile and retaliatory against Williams.  For example, although

Williams was demote to Driver, Henderson required Williams to perform Lead Driver duties and tasks.  Moreover, Henderson requested that a mechanic inspect Williams' truck to find a potential infraction Henderson could use a pretextual basis to terminate Williams' employment.

33.

Within a month of the complaint to Human Resources, Henderson wrote-up Williams for an *alleged* verbal altercation with McKinney, Henderson's lover. Because the alleged verbal altercation never occurred, Williams challenged the write-up.  Nevertheless, on or about June 21, 2019, Williams was suspended without pay based upon McKinney's false allegations.

34.

On or about June 24, 2019, Henderson sent Human Resources another letter, complaining about, *inter alia*, Henderson's sexual harassment and retaliation—Human Resources never responded.

35.

Faced with Lazer Spot's refusal to take any remedial action based upon Williams' repeated complaints, on or about July 3, 2019, Williams filed a Charge of Discrimination with the EEOC.

36.

Rather than respond to Williams' complaints or take any remedial action related to Henderson's sexual harassment and retaliation, on or about July 5, 2019, Defendants terminated Williams' employment.

37.

Even after terminating Williams' employment, Defendants continued the retaliatory campaign against Williams.   For example, Williams' subsequent employer, Pratt Industries, requested verification of Williams' dates of employment with Lazer Spot. Although Williams had been employed with Lazer Spot for approximately eight (8) months, Lazer Spot stated that Williams had only been employed for two (2) months.  But for Williams' ability to verify the actual dates of employment through income records, Williams' employment would have again been wrongfully terminated.

38.

Although Williams diligently performed, Defendants treated Williams unequivocally and significantly less favorably than her male co-workers who were in similar and comparable positions.

39.

Despite Williams complaints, reports, and notification of unlawful treatment and sexual harassment, Defendants did nothing to address Williams complaints and, ultimately, retaliated against Williams shortly after complaints and reports of sexual harassment.

## IV.  CLAIMS FOR RELIEF

### COUNT I
### SEXUAL HARASSMENT
### HOSTILE WORK ENVIRONMENT AND *QUID PRO QUO*
### IN VIOLATION OF TITLE VII
**(Against Defendant Lazer Spot)**

40.

Williams re-alleges and incorporates each and every preceding Paragraph of the Complaint as if set forth fully herein.

41.

Title VII prohibits employers from discriminating against an employee based upon sex/gender, including sexual harassment in the form of unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature with the purpose or effect of unreasonably interfering with an employee's performance or creating an intimidating, hostile, and/or offensive work environment.

42.

Defendants violated Title VII, such that a cause of action exists where discrimination on the basis of gender/sex was the causative agent of adverse actions directed at Williams by Defendants.

43.

While employed by Lazer Spot, Williams was forced to endure, because of her gender/sex, a hostile work environment, sexual assault, and sexual battery, where Williams was subjected to adverse employment action(s) while forced to endure inflammatory remarks, harassment, intimidation, humiliation without any legitimate basis, as well as constant unwelcome sexual comments and advances without any legitimate basis.

44.

Williams, as a fifty-eight (58) year old female, is a member of a protected group.

45.

From on or about September 2018 until July 2019, an employer-employee relationship existed between Williams and Lazer Spot, such that Williams was an "employee" and Lazer Spot was an "employer" within the meaning Title VII.

46.

At all times relevant to this action, Lazer Spot acted by and through its agents and employees, including, but not limited to, Henderson, each of whom acted in the course and scope of their employment with and for Lazer Spot.

47.

During the course of Williams employment, Henderson repeatedly subjected Williams to unwelcome sexual comments and advances, including, but not limited to, repeatedly groping Williams' breasts and buttocks, requesting that Williams accompany Henderson to the woods and hotels to engage in sexual intercourse, making other unwelcome sexual advances and requests while intoxicated.

48.

Similarly, while employed by Lazer Spot, Williams was forced to endure, because of her gender/sex, unwelcome sexual harassment, including, but not limited to, conditioning additional monies and professional assistance on sexual favors.

49.

Henderson's almost daily unwelcome sexual comments and advances were severe and pervasive, materially affecting the terms and conditions of William's employment.

50.

When Williams refused to comply with, and reported, Henderson's constant, unwelcome sexual comments and advances, Henderson aggressively escalated the sexual harassment, assaults, and batteries while Defendants subjected Williams to tangible employment actions, including, but not limited to, write-ups, suspensions, and termination of employment without cause based solely on Williams' complaints concerning sexual harassment.

51.

The discrimination to which Williams was subjected to by Defendants was based upon gender/sex in violation of Title VII and, thus, Williams is entitled to all appropriate relief provided under the law.

52.

Defendants' actions constituted discrimination and disparate, adverse treatment based upon gender/sex such that the intentional actions by Defendants adversely impacted Williams' terms, conditions, and privileges of employment.

53.

Defendants' actions created a hostile work environment based upon gender/sex such that the intentional actions by Defendants adversely impacted Williams' terms, conditions, and privileges of employment.

54.

Defendants' discriminatory conduct was accomplished pursuant to an unofficial policy, practice, and/or custom of Defendants.

55.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause Williams harm and/or was committed with reckless disregard of the harm caused to Williams, in derogation of her Federally-protected rights, Williams suffered and continue to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to their reputation, and other pecuniary loses.

56.

Defendants' intentional and illegal conduct entitles Williams to compensatory damages, as well as any and all other remedies available under Title VII.

57.

Defendants' actions with regard to Williams demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care and, therefore, Williams is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT II:
## RETALIATION
## IN VIOLATION OF TITLE VII
**(Against Defendant Lazer Spot)**

58.

Williams re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

59.

Title VII prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights under, Title VII.

60.

Williams is a fifty-eight (58) year old African-American female and member of a protected group.

61.

During the relevant period, the relationship between Williams and Lazer Spot was an employer-employee relationship within the meaning of Title VII, such that a cause of action exists where retaliation on the basis of opposing and/or reporting discrimination is alleged to be the causative agent of adverse employment action(s) directed to Lazer Spot by Defendants.

62.

During the course of Williams' employment, Defendants unlawfully and knowingly discriminated against Williams based upon, among other things, gender/sex in violation of, *inter alia*, Title VII.

63.

Williams repeatedly complained to Defendants' management and human resources about unlawful employment practices based upon gender/sex and sexual harassment.

64.

Similarly, on or about July 3, 2019, Williams filed with the EEOC a Charge of Discrimination, wherein Williams complained about sexual harassment and retaliation in violation of Title VII.

65.

Immediately following Williams complaints concerning, among other things, unlawful employment practices and sexual harassment, Defendants reduced Williams' hours, demoted Williams, wrote-up Williams, suspended Williams without pay, terminated Williams' employment, and sought to have Williams' subsequent employment terminated based solely on Williams' complaints concerning sexual harassment and retaliation in violation of, *inter alia*, Title VII.

66.

The effect of Defendants' actions has been to suspend and deprive Williams of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Williams because of the exercise of Williams' Federally-protected rights.

67.

Defendants' adverse employment action(s) against Williams constitute unlawful retaliation against Williams in violation of, *inter alia*, Title VII.

68.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Williams' harm and/or were committed with reckless and wanton disregard of the harm causes to Williams in derogation of Williams' Federally-protected rights.

69.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

70.

The retaliation to which Williams was subjected by Defendants entitles Williams to all appropriate relief afforded under the law.

71.

As a result of Defendants' intentional and unlawful actions, Williams has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to her reputation, other indignities, as well as past and future pecuniary losses.

72.

Defendants' actions with respect to Williams have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Williams is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNTS III AND IV:
## ASSAULT AND BATTERY
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Lazer Spot and Henderson)

73.

Williams re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

74.

Georgia law prohibits, among other things, intentional conduct causing physical harm to another person.

75.

Additionally, Georgia law prohibits, among other things, attempted batteries and/or conduct that places another person in reasonable apprehension of an immediate violent injury.

76.

At all relevant times, Henderson and Williams were employed by Lazer Spot.

77.

During the course of employment, Williams was required, as a Driver and Lead Driver, to work under the instruction and direct supervision of Henderson.

78.

Despite Williams' repeated objections, opposition, reports, and complaints, Henderson repeatedly made unwelcome sexual comments and advances, including, but not limited to, repeatedly groping Williams' breasts and buttocks, requesting sexual encounters, as well as making other unwelcome sexual advances and remarks while intoxicated.

79.

Henderson's repeated physical attacks and assaults, which were willful, intentional, and directed towards Williams for reasons personal to Henderson, proceeded from anger, rudeness, and/or lust.

80.

When Williams refused to comply with, and reported, Henderson's constant, unwelcome sexual comments and advances, Defendants began to subject Williams to retaliatory adverse employment actions.

81.

Although Williams repeatedly complained to Defendants' management and human resources concerning Henderson's unwelcome sexual advances and remarks, as well as threatening conduct, Defendants failed to take any remedial action.

82.

As a direct result of Henderson's repeated offensive comments, sexist remarks, forceful physical contact, and increasingly aggressive sexual actions, Williams reasonably apprehended a violent injury and/or battery.

83.

All apparent circumstances, reasonably viewed, were such as to lead a person to reasonably apprehend a violent injury and/or battery from Henderson's unlawful conduct.

84.

Henderson was not privileged, authorized, or justified when repeatedly touching Williams in a sexual manner and forcibly groping Williams in a sexual manner.

85.

When repeatedly assaulting Williams, Henderson was performing within the scope of his employment with Lazer Spot.

86.

As the direct and proximate result of Defendants' intentional, willful, unlawful, and tortious conduct, Williams has suffered, among other things, fear, humiliation, embarrassment, mental anguish, physical injuries, and damages in an amount to be determined at trial.

87.

Defendants' tortious actions and conduct were undertaken in bad-faith.

88.

The assaults and batteries to which Williams was subjected by Defendants entitles Williams to all appropriate relief afforded under the law.

89.

Defendants' actions with respect to Williams have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Williams is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT V:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Lazer Spot and Henderson)

90.

Williams re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

91.

Defendants' statements, conduct, and behavior towards Williams were intentional and reckless, extreme and outrageous, causing Williams severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

92.

Defendants' statements, conduct, and behavior towards Williams demonstrate, among other things, a "retaliatory animus."

93.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Williams, as well as Williams income and/or livelihood.

94.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Williams, Defendants knew that Williams was dependent upon the income received from with employment with Lazer Spot.

95.

Henderson repeatedly subjected Williams to unwelcome sexual comments and advances, including, but not limited to, groping Williams' breasts and buttocks, requesting that Williams accompany him to hotels and the woods for sexual intercourse, as well as other unwelcome sexual advances and remarks while intoxicated.

96.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Williams.

97.

As a result of Defendants' conduct, Williams has and will continue to suffer severe emotional distress and other damages for Williams is entitled to recover.

**COUNT VI**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF GEORGIA LAW**
**(Against Defendant Lazer Spot)**

98.

Williams re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

99.

As a result of the actions taken by Defendants, Williams suffered, among other things, assaults, batters, discrimination based gender/race, and retaliation.

100.

Defendants owed Williams a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, and/or tortious conduct.

101.

By negligently retaining and supervising its employees, including, but not limited to, Henderson, Lazer Spot breached their duty to hire, retain, and supervise employees who would lawfully behave.

102.

Lazer Spot knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Williams. Indeed, Williams repeatedly complained about and reported Henderson's tortious and unlawful conduct to Lazer Spot.

103.

By failing to engage in any corrective or remedial action, Lazer Spot ratified, condoned, and/or adopted its employees' unlawful conduct.

104.

As a direct and proximate result of Lazer Spot's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Henderson, Williams suffered damages.

105.

Lazer Spot's negligent conduct entitles Williams to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)   That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)   That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, Title VII were violated;

(c)   That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)   That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)   That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of, *inter alia*, Title VII;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

Respectfully submitted, this 6th day of May, 2021.

MOLDEN & ASSOCIATES

  _/s/    Regina S. Molden_
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
YIYING ZHANG
Georgia Bar No. 798231
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com
Email:  azhang@moldenlaw.com

*Counsel for Plaintiff Sandra A. Williams*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SANDRA A. WILLIAMS, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| LAZER SPOT, INC., and ARTHUR HENDERSON, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 6th day of May, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*_____
T. ORLANDO PEARSON
Georgia Bar No. 180406